UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Bankruptcy No. 11 B 02105 |
| JUANA and JUAN L. GUTIERREZ, ) | Chapter 7 |
| ) | Judge Donald R. Cassling |
| Debtors. ) | |

**ORDER AWARDING ATTORNEY FEES AND COSTS RESULTING FROM BRENDAN FINANCIAL, LLC'S VIOLATION OF THE AUTOMATIC STAY AND DISCHARGE INJUNCTION (DOCKET NO. 36)**

## I. INTRODUCTION

On December 12, 2017, the Court granted the amended motion for sanctions/damages for violation of the automatic stay and discharge injunction filed by Juana and Juan L. Gutierrez (the "Debtors") finding that Brendan Financial, Inc. ("Brendan Financial") violated the automatic stay and discharge injunction. On December 19, 2017, the Court entered an Order that allowed the Debtors to introduce evidence of their attorney fees and costs resulting from Brendan Financial's violation of the automatic stay and discharge injunction. On January 16, 2018, the Debtors submitted an itemization of their attorney fees and costs from the law firm David M. Siegel & Associates (the "Law Firm"). Included in that itemization were payments the Debtors made to Brendan Financial from April 2011 through November 2014 totaling $30,984.09 as well as attorney fees in the amount of $7,850 and costs of $284.18. Brendan Financial filed an objection to the itemization on January 30, 2018. In its objection, Brendan Financial does not challenge the $30,984.09 in payments that the Debtors made. Rather, it objects to some of the attorney fees and costs. The Court held a prove-up hearing on February 6, 2018. No further evidence in support of the fees and costs was offered by the Debtors. Benjamin D. Rios, an attorney with the Law Firm, made certain representations regarding the itemization which the Court will discuss herein.

## II. APPLICABLE STANDARDS

A. An applicant for fees is expected to exercise "billing judgment," which requires it to reduce the hours actually spent to the number of hours reasonably required to accomplish a task. *Spegon*

*v. Catholic Bishop of Chicago*, 175 F.3d 544, 552 (7th Cir. 1999). In the exercise of billing judgment, an applicant should exclude from the fees sought those hours that are excessive, redundant, or otherwise unnecessary. *Id.*

B.   The Court will employ the lodestar method in calculating whether the fees here were reasonably incurred. The Seventh Circuit has held that this method is appropriate when determining whether attorney fees were reasonably incurred. *See, e.g., Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010) (calling the lodestar method the "touchstone" for calculating attorney fees); *In re Taxman Clothing Co.*, 49 F.3d 310, 315 (7th Cir. 1995) (stating that the lodestar approach is the appropriate approach "that is normally taken in cases in which a judicial award of attorney's fees is sought . . . including bankruptcy cases"); *Kotsilieris v. Chalmers*, 966 F.2d 1181, 1187 (7th Cir. 1992) (holding that a trial court "should determine the reasonable number of hours expended and the reasonable hourly rate for such expenditures"). The lodestar method entitles the petitioning party to compensation for time "reasonably expended." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

C.   The party seeking fees bears the burden of proving the "reasonableness of the hours worked. . . ." *Spegon*, 175 F.3d at 550. When the fees are inadequately documented or vague, a court may reduce the fees by a reasonable percentage. *Harper v. City of Chicago Heights*, 223 F.3d 593, 605 (7th Cir. 2000).

D.   When seeking attorney fees incurred in enforcing the discharge injunction, a debtor bears the burden of showing entitlement to the fees by presenting sufficiently detailed information or evidence with respect to the attorney's services in order to give rise to a presumption of reasonableness attached to the lodestar calculation. *Williams v. Williams (In re Williams)*, 368 B.R. 744, 747 (Bankr. N.D. Ind. 2007).

### III.   DISCUSSION

**Attorney Fees**

A.   First, the Court will address the $7,850 in fees incurred by the Law Firm in its representation of the Debtors with respect to Brendan Financial's violation of the automatic stay and discharge injunction.

B.   Brendan Financial objects to the itemization submitted by the Debtors because it was not

2

supported by an affidavit or by the actual invoices of the time spent by the Law Firm. At the prove-up hearing, Mr. Rios, who was in charge of the Debtors' file, certified to the Court that the itemization constitutes an accurate summary of the time spent by the Law Firm regarding the representation of the Debtors, and that such records were kept in the ordinary course of its employment by the Debtors. He explained that this itemization fairly and accurately embodies the services the Law Firm provided to the Debtors, and that the fee agreement between the Law Firm and the Debtors provided for a $250 per hour flat rate charged for all services performed. Mr. Rios clarified the names of the individuals listed by their initials on the itemization and set forth the experience each attorney had in the bankruptcy area.

C.     Based on these statements made by Mr. Rios, the Court finds that the itemization represents a summary of the Law Firm's billing records under Federal Rule of Evidence 1006. Counsel for Brendan Financial stated that he accepted the itemization as a summary of the Law Firm's billing records and did not wish to examine the actual records.

D.     Brendan Financial also objects to some of the time billed by the Law Firm as unreasonable. The Court finds that most of the time expended by the Law Firm was reasonable and therefore compensable. The Court agrees with Brendan Financial, however, that some of the time spent by the Law Firm was not reasonable and therefore is not compensable. The Court has reviewed the time entries set forth in the itemization as well as the objection thereto raised by Brendan Financial and finds that there are certain fees charged that are not reasonable. Therefore, reductions in the amount sought are warranted.

E.     First, Brendan Financial objects to the time spent by the Law Firm preparing the motion for sanctions. Brendan Financial points to the August 9, 2017 time entry which shows that the Law Firm expended 5.0 hours of time preparing and filing the two-page motion with three exhibits, and spent 1.20 hours on August 8, 2017 conducting research regarding the motion. Brendan Financial argues that all of this time spent was excessive and should have taken only 1.50 hours. The Court agrees that the Law Firm's expenditure of 6.20 hours of time for a total of $1,550 in fees for the researching, drafting, and filing of the motion for sanctions is excessive and therefore unreasonable. The Court disagrees with Brendan Financial that only 1.50 hours should be allowed. Instead, the Court will reduce this time by 50% and allow only $775. This amount reflects what the Court views as a reasonable amount of time spent on this task. Thus, the Court disallows $775

3

in fees.

F.      Next, Brendan Financial objects to the .80 hours of time spent by the Law Firm on August 22, 2017 to "update" and refile the motion for sanctions. According to Brendan Financial, the updated motion is practically identical to the original filing and should have required only .30 hours of time to update and refile. After reviewing the docket, it appears that the Clerk's Office required the Law Firm to refile the motion due to some error. The Court agrees that the expenditure of .80 hours of time for fees of $200 is unreasonable. The Court will reduce this time by 50% and allow only $100 for this task. The Court views that amount as reasonable and necessary. Therefore, the Court disallows $100 in fees for this task.

G.      Brendan Financial also objects to the .40 hours spent and the $100 in fees charged by the Law Firm on August 25, 2017 for the time spent speaking to the Clerk's Office regarding the motion for sanctions being filed incorrectly and for refiling the motion. Because the Court already allowed $100 for the updating and refiling of the motion, any further time spent by the Law Firm would be duplicative and unreasonable. Thus, the Court disallows this time entry and the $100 in fees charged by the Law Firm for this task.

H.      Next, Brendan Financial points to the September 5, 2017 and September 25, 2017 time entries, both of which contain the following description: "The case was marked closed. Phone call with clerk: this is in error. They'll update the docket." The first time entry reflects .10 hours of time spent and fees of $25, and the second time entry shows 1.0 hours of time and fees of $250. Brendan Financial argues that the latter charge is duplicative and excessive. The Court agrees that the time spent on September 25, 2017 is unreasonable and duplicative of the time spent on September 5, 2017. Thus, the Court disallows the $250 in fees charged on the latter date.

I.      Further, Brendan Financial objects to the 3.90 hours spent and $975 in fees charged by the Law Firm on November 22, 2017, November 25, 2017, and November 27, 2017 to prepare exhibits for the evidentiary hearing on the motion for sanctions on the basis that such time and fees are excessive. According to Brendan Financial, with the exception of the Debtors' bank statements and a letter to them from Michael Collins, the exhibits were previously attached to the motion for sanctions or are orders entered by the Court. The Court agrees with Brendan Financial that the expenditure of 3.90 hours to organize and tab exhibits is excessive and unreasonable and therefore warrants a reduction. The Court will reduce the time spent by the Law Firm on this task by 2.90

4

hours and $725 in fees. In the Court's view, 1.0 hour of time spent to prepare the exhibits is reasonable. Thus, the Court will allow only $250 in fees for this task.

J. Next, Brendan Financial objects to the time spent by two attorneys at the Law Firm preparing for the hearing on the motion for sanctions as duplicative. On November 29, 2017 and November 30, 2017, a total of 2.30 hours of time was billed by "BDR" (Mr. Rios) to draft questions, review case history, review exhibits, and prepare for the hearing. On December 3, 2017, "JSC" (who was identified by Mr. Rios at the prove-up hearing as Jason S. Cotey) spent 1.0 hour to prepare for the hearing, draft questions, and review exhibits. The Court agrees that the time spent by both attorneys was duplicative in light of the fact that only Mr. Cotey appeared at and participated in the evidentiary hearing. Therefore, the Court disallows the 2.30 hours of time and $575 in fees charged by the Law Firm.

K. Brendan Financial also objects to the 1.0 hour spent by the Law Firm on January 15, 2018 to prepare the itemization as excessive and states that the Law Firm should have only spent .40 hours preparing that document. The itemization is four pages in length and sets forth the time and expenses incurred by the Law Firm during its representation of the Debtors from July 2017 through January 2018. While the rules governing fee applications made under 11 U.S.C. § 330 and Local Bankruptcy Rule 5082-1 do not apply to fee awards for violation of the automatic stay and discharge injunction, the case law interpreting those provisions is instructive. Courts in this District award fees incurred in the preparation of fee applications, generally allowing 3-5% of the total amount sought. *See, e.g., In re Spanjer Bros., Inc.*, 203 B.R. 85, 93 (Bankr. N.D. Ill. 1996) (limiting compensation to 5% of the total fees sought); *In re Wildman*, 72 B.R. 700, 711 (Bankr. N.D. Ill. 1987) (limiting compensation to 3% of the total fees sought). However, in limited circumstances, courts have allowed 10% of the total amount sought. *See In re Churchfield Mgmt. & Inv. Corp.*, 98 B.R. 838, 867 (Bankr. N.D. Ill. 1989). In this matter, the Law Firm is seeking only $250 in fees for preparation of the itemization or approximately 3% of the total fees it billed. The Court finds the expenditure of one hour to prepare the summary of the fees and expenses incurred by the Law Firm in its representation of the Debtors was both reasonable and necessary and certainly within the low percentage range of overall fees charged. Therefore, the Court overrules this objection made by Brendan Financial.

L. Finally, Brendan Financial argues that two entries on the itemization are services that

5

constitute overhead costs and should not be allowed. The first entry is dated August 5, 2017 for .50 hours of time and fees of $125 to obtain a copy of the state court complaint filed by Brendan Financial against the Debtors. This task was performed by "MRC" who was identified by Mr. Rios as attorney Michael R. Colter. While the Court disagrees with Brendan Financial that such time was improperly billed as an overhead cost, it does agree that the task of obtaining a document from the state court is clerical in nature and does not command a $250 per hour billing rate charged by an attorney. Mr. Rios stated at the hearing that the Law Firm and the Debtors agreed that all services performed on their behalf would be billed at an hourly rate of $250. Nevertheless, the Court finds that this task was clerical or ministerial in nature and does not warrant a fee of $125 for .50 hours of time spent. The Court will therefore reduce the amount charged by 50% or $62.50. The Court will allow only $62.50 in fees for this task.

M.  The second entry is on August 22, 2017 for .20 hours of time and fees of $50 to amend the Debtors' address on Pacer. This task was performed by "OFFICE." Mr. Rios explained at the prove-up hearing that this task was undertaken by a data entry clerk at the Law Firm. Clearly, this service was clerical and, regardless of the Law Firm's agreement with the Debtors, charging $250 per hour to perform this task is not reasonable. The Court will reduce the amount by 50% or $25. The Court will allow only $25 in fees for this work.

N.  In conclusion, the Court finds that most of the fees charged by the Law Firm are reasonable and will therefore be allowed. Based on the foregoing analysis, however, the Court reduces the Law Firm's fees by the total of $2,612.50 for the reasons previously articulated. The Court will allow fees in the amount of $5,237.50

**Costs**

A.  Next, the Court will address the $284.18 in expenses incurred by the Law Firm in its representation of the Debtors with respect to Brendan Financial's violation of the stay and discharge injunction. Those costs consist of $250 for the transcript of the Court's oral ruling on December 12, 2017 and $34.18 in postage and certified mail expenses. At the prove-up hearing, Mr. Rios indicated that the $250 cost for the transcript was only an estimate and that the actual cost was only $96, thereby reducing the costs sought to $130.18.

B.  Courts have broad discretion to determine reimbursable costs and expenses. *Haroco, Inc. v. American Nat'l Bank & Trust Co. of Chicago*, 38 F.3d 1429, 1439 (7th Cir. 1994). A court will

award costs that are reasonable in amount and necessary to the litigation. *Harkins v. Riverboat Servs., Inc.*, 286 F.Supp.2d 976, 979 (N.D. Ill. 2003).

C.     Brendan Financial objects to the postage charges on the bases that they (1) are not supported by affidavit, (2) appear to include duplicative charges or charges that arise as a result of attorney error, and (3) represent overhead expenses.

D.     The Court overrules Brendan Financial's objection to these costs. There is no requirement that the Law Firm include an affidavit supporting these costs. After reviewing the itemization, it appears that the Law Firm incurred these expenses mailing documents pertaining to the motion for sanction to the Debtors. While Brendan Financial contends that the postage fees "appear to include duplicative charges or charges that arise as a result of attorney error," Brendan Financial does not explain this statement. After reviewing the six postage charges that total $34.18, the Court finds that there were no duplicate charges or charges that resulted from attorney error. The Court does not view certified mail and postage charges as an overhead expense. With respect to the transcript of the Court's oral ruling, the Law Firm reduced the estimated cost of $250 to the actual cost of $96. Based on this reduction, the Court overrules Brendan Financial's objection that such expense was not actually incurred by the Debtors.

E.     In sum, the Court finds that all of the expenses were reasonable and necessary and will be allowed in full.

## IV.    CONCLUSION

Based on the foregoing, the Court orders Brendan Financial to refund to the Debtors the payments they made from April 2011 through November 2014 in the amount of $30,984.09. In addition, the Debtors are awarded their reasonable attorney fees in the sum of $5,237.50 and costs in the amount of $130.18. Brendan Financial is responsible for those amounts.

**DATE: February 8, 2017**                    **ENTERED:**

                                   _____
                                   **Donald R. Cassling**
                                   **United States Bankruptcy Judge**

7